UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PEFORMANCE INDUSTRIES, INC.; and DET DIESEL EMISSION TECHNOLOGIES, LLC, | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. 3:25-CV-2718-B |
| DPF ALTERNATIVES LLC; DPF SOURCE LLC; DPF SOURCE HOLDINGS LLC; NEW CORE LLC; PEDRO JUNIOR REYES; CHRIS BURREI; JGD FILTERS LLC; RTR DPF LLC; ROBERT THOMAS RANGEL; JAIME RANGEL; DPF ALTERNATIVES OF TEXAS LLC; HAYETT GARCIA; KYLUN CHING; STEVEN SLOAN LINDEMANN; and TRITON FLEET SERVICES LLC, | § | |
| Defendants. | § | |

# MEMORANDUM OPINION AND ORDER

Before the Court are two motions to dismiss: one filed by Defendants Chris Burrei and Pedro "Junior" Reyes (Doc. 19), and the other filed by Defendants Hayett Garcia, Steven Sloan Lindemann, and Jaime Rangel (Doc. 23). For the reasons that follow, the Court **GRANTS** both motions and **DISMISSES** this action. A final judgment will follow.

## I.

## BACKGROUND

This case is one among several pitting Plaintiffs Performance Industries, Inc., and DET Diesel Emission Technologies, LLC (together, "DET") against affiliates of DPF Alternatives LLC

("DPF").[1] DET provides products and services for diesel engines, and DPF franchises individual service locations for diesel-engine vehicles. In this case, DET has accused several individuals associated with DPF or its franchises of conspiring to steal DET's trade secrets and damage its business. The following background takes the allegations in the Amended Complaint as true, as the Court must do at the motion-to-dismiss phase.

A. *DET's Business and the Defendants*

At the center of this case is a technology called "Recore," which is DET's "proprietary method for removal and replacement of diesel emission systems cores." Doc. 15, Am. Compl. ¶ 30. DET licenses Recore processes and products to service/repair shops across the country through a form agreement called the "Master Service Agreement" or "MSA." *Id.* ¶ 32. Each MSA "mandates the use of trade secrets/confidential information, proprietary equipment and exclusive use of Recore™ cores." *Id.* ¶ 33. Licensees have access to DET's online portal, whereon the licensees can "research parts, products, and processes, submit orders, receive training, and conduct other trade secret processes online." *Id.* ¶ 34. The MSAs prohibit licensees from allowing "third parties outside of any MSA . . . to view, use, or in any way obtain the delineated protected information within the MSA." *Id.* ¶ 33. Through marketing Recore, DET "achieved a strong position in the diesel and off-road markets" nationwide. *Id.* ¶ 35.

Defendants Burrei and Reyes are, respectively, the vice president and founder of DPF, which—as mentioned above—franchises individual diesel engine servicing locations. *Id.* ¶¶ 20, 36. Burrei and Reyes are the central players in the Amended Complaint's allegations, and they generally

[1] For additional background on the larger dispute, see *DPF Alts., LLC v. DET Diesel Emission Techs., LLC*, No. 3:24-cv-1953-B, 2025 WL 1908170, at *1 (N.D. Tex. July 10, 2025) (Boyle, J.); and *DPF Alts., LLC v. DET Diesel Emission Techs., LLC*, No. 3:24-cv-1953-B, 2025 WL 3089688, at *1 (N.D. Tex. Nov. 5, 2025) (Boyle, S.J.).

directed DPF's activities throughout. The remaining defendants—Robert Rangel, Jaime Rangel, Kylun Ching, Hayett Garcia, and Steven Sloan Lindemann—are all Texas-based owners of DPF franchisees. *See id.* ¶¶ 15–19, 69. In this opinion, the Court will refer to these individual franchisee owners as the "Franchisee Defendants."

Only the individuals listed above are currently defendants in this lawsuit. DET's original complaint included DPF and several affiliated entities as defendants, *see* Doc. 1, Compl. ¶¶ 16–19, but these defendants were removed in the Amended Complaint.

*B. DET's Early Collaboration with DPF and Subsequent Falling-Out*

In August 2021, Burrei and Reyes began working with DET to bring DET's Recore technology to DPF franchisees. *See id.* ¶¶ 38, 41. Burrei, on behalf of DPF, entered into a "Nondisclosure Agreement" with DET to "induce" DET to disclose confidential information. *Id.* ¶ 39. Burrei also sent an email to DET "replete with references to co-branding"—which, according to DET, indicated Burrei's and Reyes's intent to convert DET's Recore-related "intellectual property, proprietary, and trade secret information to their own benefit and profit." *Id.* ¶¶ 39–40. Then, Burrei and Reyes "pushed" DET's representatives to meet in-person with them and approximately 25 DPF franchisees in Coppell, Texas. *Id.* ¶ 41. That meeting resulted in 17 DPF franchisees signing up to use Recore by executing MSAs with DET. *Id.* Prior to the execution of the MSAs, Burrei and Reyes placed DET on DPF's "approved vendor list"—the list of exclusive vendors with which DPF franchisees could deal. *Id.* ¶ 42.

Beginning in early 2022, Reyes and Burrei, through DPF, began demanding that the DPF franchisees who had entered into MSAs with DET divulge the contents of those agreements to DPF. *Id.* ¶ 47. DPF franchisees that refused to do so "were excluded from Facebook, Zoom, and regular

meetings of all DPF Franchisees." *Id.* These requests violated the MSA's confidentiality provisions. *Id.* The franchise agreement between DPF and its franchisees also allowed Burrei and Reyes to access the franchisees' business systems, which granted them the ability to view and retain DET's trade secrets protected by the MSA. *Id.* ¶ 48. All Franchisee Defendants provided DPF access to DET's proprietary information. *Id.* ¶ 69.

The Amended Complaint recounts two requests by Reyes and Burrei to change how DET conducted its Recore business. *See id.* ¶¶ 43–44. In September 2021, Reyes asked DET to change the color scheme of Recore presses to align with DPF's brand. *Id.* ¶ 43. In September 2022, Burrei asked DET to charge only $5,000 for using its Recore press and demanded that no MSA be required for DPF franchisees. *Id.* ¶ 44. DET denied both requests. *Id.* ¶¶ 43–44.

Things went sour in October 2022: Reyes and Burrei, through DPF, removed DET and Recore as approved vendors for the DPF franchisees. *Id.* ¶ 45. In the email communicating the change, Reyes and Burrei told the franchisees that they should continue to "share contractual items that pertain to Recore" with them. *Id.* The following month, Reyes and Burrei required the DPF franchisees to agree not to share confidential information with DET—at the risk of exclusion from DPF's all-franchisee meetings. *See id.* ¶¶ 51–55.

C. *After the Falling-Out: "New Core," Lawfare, Hostility, and the EPA*

In January 2023, Reyes and Burrei launched "New Core," a counterfeit of "Recore" that was developed using DET's proprietary information. *Id.* ¶ 58. Reyes and Burrei allowed the DPF franchisees only to use New Core and prohibited them from using Recore. *See id.* ¶¶ 60–61. In an email to the DPF franchisees, Burrei made it seem that New Core was a separate company, not one

aligned with him and Reyes. *Id.* ¶ 62. Burrei also noted that some DPF franchisees had elected to use Recore, despite DPF's instruction not to use non-approved vendors. *Id.* ¶ 63.

From 2022 to the present, Reyes and Burrei threatened several DPF franchisees with termination of their franchise agreement if they did not file lawsuits against DET. *See id.* ¶¶ 66–72. The "lawfare campaign" succeeded, with five lawsuits launched by DPF affiliates against DET. *Id.* ¶ 71.

The Amended Complaint recounts an instance where a shop, which used Recore and was unaffiliated with DPF, had one of its business cards altered to add the address of a DPF franchise location. *See id.* ¶¶ 73–74. When the shop-owner tried to resolve the issue with Reyes, Reyes said he "will 'crush'" the shop-owner's business. *Id.* ¶ 75.

Reyes and Burrei also reached out to the EPA to collaborate with them as "eyes and ears" for the agency in exchange for its endorsement. *See id.* ¶¶ 76–84.

*D. DET's Counterclaims in DPF's Lawsuit*

Much of the above-recounted story is not new. In response to what DET has called DPF's "lawfare campaign," DET filed counterclaims. *E.g.*, Defendants DET Diesel Emission Technologies, LLC and Synergy Catalyst, LLC's Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint and Counterclaims, *DPF Alts., LLC v. DET Diesel Emission Techs., LLC*, No. 3:24-cv-1953-B (N.D. Tex. Mar. 17, 2025), Dkt. No. 128 (hereinafter, the "Counterclaims").

The Counterclaims are asserted against DPF and several DPF franchisees. *Id.* at 17–18. In the Counterclaims, DET alleged that it developed Recore and the associated online portal and that it has a patent covering Recore. *Id.* at 19–21. DET described how "a group of entities and individuals" associated with DPF began communicating with DET in 2021 to have Recore licensed

for use at DPF franchise locations. *Id.* at 21–22. The Counterclaims described the MSAs and how they required that confidential information be kept from non-signatories but that DPF nevertheless accessed and used DET's trade secrets to develop New Core. *Id.* at 21–23. The Counterclaims assert causes of action for direct and indirect patent infringement, along with trade secret misappropriation in violation of state law and 18 U.S.C. § 1836. *Id.* at 23–53.[2]

*E. DET's Claims in this Lawsuit*

In this lawsuit, DET alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") predicated on wire fraud, extortion, and theft of trade secrets. For wire fraud, DET alleges that a series of Burrei's, Reyes's, and/or DPF's statements made in the course of the early attempt to collaborate with DET, in communication to DPF franchisees, and in the deployment of New Core were part of the "scheme to defraud." *See* Doc. 15, Am. Compl. ¶ 89. The alleged extortion involved "the wrongful threat to DPF Franchisees that unless they allowed REYES and BURREI access, directly or indirectly, to and shared with them Plaintiffs' intellectual property, which was licensed by the DPF Franchisees, REYES and BURREI would terminate their DPF franchise." *Id.* ¶ 94. The theft of trade secrets predicate involves misappropriation of Recore-related information. *Id.* ¶¶ 96–104.

As to the Franchisee Defendants, DET alleges that they provided access to trade secrets to Burrei and Reyes as part of the RICO conspiracy. *Id.* ¶ 117.

DET finally alleges "conversion" and "fraud" against all Defendants. *Id.* ¶¶ 120–31.

[2] DET or its affiliates also filed counterclaims in the related cases with docket numbers 3:24-cv-1371 (Dkt. No. 66), 3:24-cv-2018 (Dkt. No. 71), 3:24-cv-2133 (Dkt. No. 94), and 3:24-cv-2977 (Dkt. No. 82). In these other counterclaims, DET asserted breach of the MSA and trade secret misappropriation against the individual DPF franchisee involved in the case.

Burrei and Reyes raise several grounds for dismissal in their motion, including lack of personal jurisdiction, claim splitting, and failure to adequately plead each claim. *See generally* Doc. 20, Burrei & Reyes Br. The Franchisee Defendants raise claim splitting and failure to adequately plead each claim in their motion as well. *See generally* Doc. 24, Franchisee Defs.' Br. The Court considers the motions below.

## II.

## LEGAL STANDARDS

### A. *Personal Jurisdiction*

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss an action for lack of personal jurisdiction. In the face of a Rule 12(b)(2) challenge, the plaintiff bears the burden to establish that personal jurisdiction is proper. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (citation omitted). When a court rules on a 12(b)(2) motion without an evidentiary hearing, the party invoking the court's jurisdiction can satisfy its burden with "sufficient facts as to make out only a *prima facie* case supporting jurisdiction." *Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387, 394 (E.D. Tex. 2022) (quoting *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000)).

### B. *Stating a Claim*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 12(b)(6) authorizes motions to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." In considering a Rule 12(b)(6) motion to dismiss, a "court accepts all well-

pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (citing FED. R. CIV. P. 8(a)(2)) (citation modified).

When deciding a Rule 12(b)(6) motion, "it is clearly proper . . . to take judicial notice of matters of public record." *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citation omitted).

C. *Heightened Pleading for Fraud*

When alleging fraud, "a party must state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). "At a minimum, plaintiffs must plead the 'who, what, when, where, and how of the alleged fraud.'" *Allstate Indem. Co. v. Bhagat*, 164 F.4th 426, 434 (5th Cir. 2026) (citation omitted).

## III.

## ANALYSIS

The Court first addresses Burrei's and Reyes's challenge to whether the Court has personal jurisdiction over them and concludes that DET has not supported jurisdiction over Burrei and Reyes. Next, the Court addresses the claim-splitting arguments advanced by all Defendants and determines that this lawsuit should be dismissed in its entirety because it is duplicative of DET's previous Counterclaims. In the final two subsections below, the Court denies Burrei's and Reyes's request for sanctions and then denies DET's request for leave to amend its complaint.

### *A. The Court Lacks Personal Jurisdiction Over Burrei and Reyes.*

Burrei and Reyes challenge whether the Court can exercise personal jurisdiction over them. Doc. 20, Burrei & Reyes Br., 9–10. There are two types of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017). General jurisdiction allows a court in the forum state to hear any claims asserted against a defendant. *Id.* Specific jurisdiction, on the other hand, only permits adjudication of those claims arising out of or relating to the defendant's contacts in the forum state. *Id.*

The Court cannot exercise general personal jurisdiction over Burrei and Reyes. General jurisdiction over an individual exists in the forum where the individual is domiciled. *Id.* The Amended Complaint alleges that Burrei and Reyes reside in Tennessee and Colorado, respectively. Doc. 15, Am. Compl. ¶¶ 13–14. Thus, the jurisdictional inquiry depends on whether DET has established specific personal jurisdiction over Burrei and Reyes.

To establish specific personal jurisdiction, three requirements must be met: (1) the non-resident defendant must "purposefully avail[] itself of the privilege of conducting activities in the

forum State"; (2) "the plaintiff's claim must arise out of or relate to those purposeful contacts"; and (3) the exercise of jurisdiction must be "fair and reasonable to the defendant." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 317-18 (5th Cir. 2021) (citation modified). In evaluating the plaintiff's assertions of the defendant's forum contacts, a court need not credit conclusory allegations. *See Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (citations omitted). To establish specific personal jurisdiction, the plaintiff must "specify[] who did what." *Pearson v. Shriners Hosps. for Child., Inc.*, 133 F.4th 433, 442 (5th Cir. 2025) (citations omitted).

DET, in response to Burrei's and Reyes's jurisdictional challenge, cites several paragraphs in the Amended Complaint that assert the two individuals have business dealings in Texas. *See* Doc. 31, DET's Resp. Burrei & Reyes Mot., 24. Two of those paragraphs merely assert the conclusion that Burrei and Reyes "conduct[] business in numerous states . . . including Texas." Doc. 15, Am. Compl. ¶¶ 13–14. The others assert the contacts of Burrei's and Reyes's co-defendants and non-defendant business entities in Texas. *See id.* ¶¶ 15–23. The last two paragraphs raised by DET allege that Burrei and Reyes "exercised substantial control over the affairs of DPF," including the group of DPF-related entities. *See id.* ¶¶ 25–26. None of these paragraphs connect Burrei's or Reyes's specific actions as individuals (rather than on behalf of DPF) to Texas. Nor do the paragraphs make any argument that Burrei and Reyes committed any specific actions sufficient to have purposefully availed themselves as individuals to be held liable in Texas.

DET did not raise the one paragraph where Burrei and Reyes "pushed" for a meeting with DET at DET's "home base" in Coppell, Texas, where Reyes and Burrei brought approximately 25 DPF franchisees. *See id.* ¶ 41. If an argument exists that this one meeting in Coppell is sufficient for Burrei and Reyes to have purposefully availed themselves to Texas and that the causes of action

asserted against them arise out of that contact, DET has not made the argument. Therefore, DET has not carried its burden to establish personal jurisdiction over Burrei and Reyes. *See Monkton*, 768 F.3d at 431.

DET's failure to establish personal jurisdiction over Burrei and Reyes would ordinarily mean that the claims against those two defendants must be dismissed without prejudice and that DET would get another opportunity to allege more specific jurisdictional facts. However, Burrei and Reyes focus much of their brief on arguing that this lawsuit contravenes the claim-splitting doctrine, much in line with what the Franchisee Defendants argue in their brief. Because the Court must address the Franchisee Defendants' arguments about claim splitting, the Court applies its conclusions to Burrei and Reyes as well. Thus, for the reasons that follow, any amendment to the complaint would be futile.

B. *DET Has Engaged in Impermissible Claim Splitting.*

"The rule against claim splitting prohibits a party or parties in privity from simultaneously prosecuting multiple suits involving the same subject matter against the same defendants." *Armadillo Hotel Grp., LLC v. Harris*, 84 F.4th 623, 628 (5th Cir. 2023) (quoting *Gen. Land Off. v. Biden*, 71 F.4th 264, 269–70 (5th Cir. 2023)). "The rule is based on principles of *res judicata* and 'protect[s] the defendant from being harassed by repetitive actions based on the same claim.'" *Id.* (quoting *Gen. Land Off.*, 71 F.4th at 270).

The Fifth Circuit's approach to claim splitting is "pragmatic." *Id.* at 629. The claim-splitting doctrine "finds particular application where . . . the plaintiff files the second complaint to achieve procedural advantage by 'circumventing the rules pertaining to the amendment of complaints.'" *Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*, 95 F.3d 358, 362 (5th Cir. 1996) (quoting

*Oliney v. Gardner*, 771 F.2d 856, 859 (5th Cir. 1985)). Dismissing a lawsuit on the grounds of claim splitting "has been viewed as a matter of docket management, reviewed for abuse of discretion." *Ameritox, Ltd. v. Aegis Scis. Corp.*, No. 3:08-CV-1168-D, 2009 WL 305874, at *5 (N.D. Tex. Feb. 9, 2009) (Fitzwater, C.J.) (citation omitted); *see Verde v. Stoneridge, Inc.*, 137 F. Supp. 3d 963, 973–74 (E.D. Tex. 2015) ("Claim splitting and res judicata both promote judicial economy and shield parties from 'vexatious concurrent or duplicative litigation.'" (citation omitted)).[3]

Here, all Defendants argue that this case may not proceed under the claim-splitting doctrine due to DET's earlier Counterclaims. To decide whether the claim-splitting doctrine prevents a later-filed similar lawsuit, the Fifth Circuit considers: (1) "whether 'the same claim or cause of action' is 'involved in both suits'" and (2) "whether the parties are the same or in privity." *Armadillo*, 84 F.4th at 628 (citation omitted). The Court addresses these two factors in turn. Then, the Court addresses DET's argument that it did not know the necessary information to bring this lawsuit until it was too late to amend its Counterclaims.

1. <u>The Same Claim or Cause of Action Is Involved in Both Suits.</u>

For the first factor in the claim-splitting doctrine, the Fifth Circuit considers whether the two cases share the "same nucleus of operative facts," which depends on "the factual predicate of the claims asserted, not the legal theories upon which the plaintiff relies." *Id.* (quoting *Eubanks v. FDIC*, 977 F.2d 166, 171 (5th Cir. 1992)). Under this test, a court should "assess whether the factual predicate of both suits is 'related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or

[3] A defendant may move to dismiss on claim-splitting grounds under Rule 12(b)(6), and—although dismissals for failure to state a claim are usually reviewed de novo on appeal—the Fifth Circuit reviews dismissals for claim splitting under an abuse-of-discretion standard. *See Armadillo*, 84 F.4th at 628.

business understanding or usage.'" *Id.* (quoting *Petro-Hunt, LLC v. United States*, 365 F.3d 385, 396 (5th Cir. 2004)).

Here, DET's earlier Counterclaims and this subsequent lawsuit involve the exact same series of events: DET's early collaboration with DPF, DPF's misappropriation of Recore trade secrets, and DPF's use of those trade secrets to create New Core. DET's argument to the contrary conflates differences in legal theories with differences in sets of facts. *See* Doc. 33, DET's Resp. Franchisee Defs.' Mot., 12–15. Although DET's RICO claims add an element of coordination among defendants, the RICO claims add that new element to the same wrongdoing already asserted in the Counterclaims. Bringing a newly labeled cause of action does not make the claim arise out of an entirely new factual predicate. *See Armadillo*, 84 F.4th at 628 ("[W]e look to the factual predicate of the claims asserted, not the legal theories upon which the plaintiff relies." (citation omitted)). Thus, the two actions present the same claim for claim-splitting purposes.

2. <u>The Parties Are the Same or in Privity Between This Case and the Counterclaims.</u>

On the plaintiff side, no one contests that DET here is the same party as DET in the Counterclaims. On the defendant side, DET makes no argument against privity between the individuals associated with DPF here and the defendants to the Counterclaims, which are DPF and affiliated entities. Nor could it: the individual Defendants in the Amended Complaint act

consistently through or on behalf of their DPF-affiliated entity.[4] DET does not plausibly allege that the individual Defendants were acting outside of that capacity.

Instead of arguing against privity as to the Defendants, DET argues that the rule against claim splitting only applies when the defendants in the old and new case are *identical*. *See* Doc. 33, DET's Resp. Franchisee Defs.' Mot., 11–12. To support this argument, DET points to the Fifth Circuit's statement that the claim-splitting doctrine "prohibits a party or parties in privity from simultaneously prosecuting multiple suits involving the same subject matter against *the same defendants*." *Gen. Land Off.*, 71 F.4th at 269–70 (emphasis added) (citations omitted). DET also asserts that "[s]everal district courts have reached the same conclusion." Doc. 33, DET's Resp. Franchisee Defs.' Mot., 11 n.1.

DET's conception of the rule as requiring identical defendants is incorrect. To begin, *General Land Office*—DET's lead case in support—implicitly supports a privity-based rule for defendants. There, a Texas state agency and the State of Texas simultaneously tried to sue the federal government over border policy, and each plaintiff named a slightly different cast of federal government officials and agencies as defendants. *See Gen. Land Off.*, 71 F.4th at 269. The Fifth Circuit's claim-splitting analysis focused on whether the plaintiffs were in privity, but it did not address the defendant's privity, even though the defendants were not all identical. *See id.* at 269–71. That analysis suggests that the federal defendants' privity made it unremarkable to think of them as the "same."

[4] As relevant here, privity can exist where the party in the subsequent suit "controlled the prior litigation" or where the party's interests in the subsequent suit were "adequately represented by a party to the original suit." *Armadillo*, 84 F.4th at 631 (citation omitted). The privity test ultimately asks "whether 'the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion.'" *Id.* (citation omitted). Here, the Defendants were in privity with DPF and DPF-related entities based on DPF's adequate representation of the Defendants' interests as to the exact same transactions in the previous litigation.

The Court is also persuaded by the Second Circuit's statement of the rule in *Sacerdote v. Cammack Larhette Advisors, LLC*, 939 F.3d 498 (2d Cir. 2019). The Second Circuit held that defendants in privity can invoke the claim-splitting doctrine (there, referred to as the "rule against duplicative litigation"), just the same as they can with the "claim preclusion" doctrine that takes effect after a final judgment. *Id.* at 507 ("We can think of no reason . . . why the principle underlying the privity rule in the context of other preclusion doctrines should not apply equally in the context of the rule against duplicative litigation."). In support, the Second Circuit cited the Supreme Court's century-old guidance that the rule against duplicative litigation "may only be invoked when the two pending suits have 'the same parties, or, at least, *such as represents the same interests*.'" *Id.* at 506 (emphasis added by court in *Sacerdote*) (quoting *The Haytian Republic*, 154 U.S. 118, 124 (1894)). The Court is persuaded by the Second Circuit's clear statement of the rule because it relies on the Supreme Court's guidance as to the rule's underlying basis and origins.

In contrast, DET's conception of the rule is not strongly supported by the district court cases it cites. Those cases provide support only in a passing reference or when it was uncontroverted that the two claims involved "the same parties." *See Advanced Micro Devices, Inc. v. Polaris Innovations Ltd.*, No. 1:23-CV-00304-DAE, 2023 WL 9183303, at *4 (W.D. Tex. Nov. 13, 2023) (stating rule as requiring "same parties" when case indisputably involved identical parties); *Saldivar v. Aus. Indep. Sch. Dist.*, No. A-15-CA-00847-SS, 2016 WL 7410744, at *2 (stating "same parties" in rule statement, not as applied to facts); *Verde*, 137 F. Supp. 3d at 973 (describing "main purpose" of rule as protecting "defendants"). One of DET's cited cases supports the opposite point: "Claim splitting is designed to bar filing of repetitive claims to circumvent adverse timing or rulings relating to adding claims, amending complaints, and *adding defendants*." *Advanced Micro Devices*, 2023 WL 9183303, at *4

(emphasis added) (citation omitted). If the claim-splitting doctrine prevents plaintiffs from circumventing rules about adding defendants, as contemplated by the court in *Advanced Micro Devices*, then it cannot require that the defendants in both actions are identical.

Most critically, DET's argument is undercut by the Fifth Circuit's guidance that claim-splitting doctrine is "pragmatic" and follows the pattern of res judicata. *See Armadillo*, 84 F.4th at 629. Res judicata does not have a "same defendant" requirement; the parties may be "identical *or* in privity." *See Petro-Hunt*, 365 F.3d at 395; *see also Sacerdote*, 939 F.3d at 506–07 (explaining that privity from "other preclusion doctrines" applies equally to "rule against duplicative litigation"). Moreover, this is the type of case where, according to the Fifth Circuit, the claim-splitting doctrine "finds particular application" because DET "file[d] the second complaint to achieve procedural advantage by 'circumventing the rules pertaining to the amendment of complaints.'" *Friends of the Earth*, 95 F.3d at 362. DET admitted in its briefing that the purpose of filing this separate RICO claim was because the deadline to amend its Counterclaims had passed. *See* Doc. 31, DET's Resp. Burrei & Reyes Mot., 10. In addition, this case *was* originally a lawsuit against some identical defendants, until DET amended its complaint to focus on the same conduct with respect to only the individual defendants. *Contrast* Doc. 1, Compl. (asserting claims against individuals and DPF entities), *with* Doc. 15, Am. Compl. (asserting claims against individuals only). DET's attempt to gain a procedural advantage makes this exactly the type of case where a court should exercise its discretion to dismiss the duplicative claim.

DET's attempted circumvention of procedural hurdles, plus the privity of the defendants, distinguishes this case from two others that DET attempts to use in support. The first is *Philpot v. Emmis Operating Co.*, in which a freelance photographer sued both the former and current owner of

a website in separate lawsuits for publishing one of his photographs without permission. *See* No. 1:18-CV-816-RP, 2019 WL 5149863, at *1, *5, *7 (W.D. Tex. June 25, 2019). The claim-splitting doctrine did not bar the second-filed claim because the two claims involved publications during different timeframes and because the defendants were not in privity as to the different timeframes of publication. *See id.* at *7. The court also noted that the plaintiff did not "seem to have sought some procedural advantage by filing" the second lawsuit. Between this case and *Philpot*, three key facts are different: (1) here, the two cases involve the same events within the same timeframe, whereas the claims in *Philpot* occurred at different times; (2) here, the Defendants are officers of the defendant entities in the related action, whereas the defendants in *Philpot* were current and former owners of a website that were responsible for different periods of allegedly infringing publication; and (3) here, DET is openly attempting to circumvent a deadline to amend pleadings, whereas the plaintiff in *Philpot* was not. Thus, *Philpot* does not support a different outcome here.

The second case cited by DET, which can also be distinguished, is *Regions Insurance, Inc. v. Potter*, No. 17-cv-1475, 2018 WL 4288439 (W.D. La. Mar. 26, 2018). In that case, a business had sued five former employees in state court for their scheme to poach customers and separately sued a sixth former employee in federal court with allegations involving the same scheme. *See id.* at *4. Although the court found "no justification for dismissing cases on this [claim-splitting] principle when they have no defendants in common," the court also noted that the plaintiff seemed to have filed separately in federal court only to "tak[e] advantage of its right to a federal forum." *Id.* In addition, although not mentioned by the court, the sixth defendant was a separate participant who was by no indication "in privity" with the other five defendants. The difference between this case and *Regions* boils down to two facts: (1) here, the previous and subsequent lawsuits were both in

federal court, precluding the argument available in *Regions* that the plaintiff split claims only to enjoy its right to a federal forum; and (2) here, the Defendants are all "in privity" with the defendants to the Counterclaims, whereas it appears that the defendants in *Regions* were not. Thus, *Regions* does not support a different outcome here.[5]

In sum, the rule against claim splitting does not require identical defendants but requires that the parties on both sides are either identical or in privity. The parties here are identical or in privity with the parties in the Counterclaims, so the "same parties" prong of the claim-splitting doctrine is satisfied.

3. <u>DET's Argument About Not Knowing Necessary Facts Does Not Excuse Its Claim Splitting.</u>

DET's last argument that the claim-splitting doctrine should not apply is that it did not know some of the facts necessary for its claims in this lawsuit until late 2025, after the deadline to amend its Counterclaims had passed. *See* Doc. 31, DET's Resp. Burrei & Reyes Mot., 10. Assuming that DET genuinely did not know necessary facts,[6] the proper course would have been to move for leave to amend its pleading in the original proceeding to add the new claims and individual parties as soon as DET learned of the additional facts. In such a motion, it would have been proper for DET

---

[5] *Regions* also includes in its rule statement that "[d]ismissal for claim-splitting has been deemed appropriate where 'the only explanation for the duplicative litigation . . . is to expand Plaintiff's procedural rights, upset the trial schedule, harass Defendants, and avoid the requirements of amendment of Plaintiff's claims.'" *Id.* at *3. None of those improper explanations for duplicative litigation were apparent in *Regions*, but here, DET has admitted to bringing its new legal theories in a new lawsuit because time had run out to amend its Counterclaims.

[6] The Court doubts that DET's argument about not knowing the necessary facts could apply to its RICO claim predicated on theft of trade secrets. Misappropriation of trade secrets was already alleged against the several DPF entities in the Counterclaims (and against additional DPF entities in several other related cases), so DET had the facts it needed to allege that the theft of its trade secrets was coordinated as a RICO enterprise. DET's supposed late realization that it could use RICO for the misappropriation of trade secrets does not permit it to file a new lawsuit with that theory.

to judiciously seek to add only those claims that are well-supported by facts, since DET had already engaged in discovery.

Instead of a judicious amended complaint based on the new information, DET appears to have taken a "shotgun pleading" approach. For example, DET's RICO claim predicated on wire fraud requires that the defendant sought to obtain "money or property" "by means of false or fraudulent pretenses, representations, or promises." *Kousisis v. United States*, 605 U.S. 114, 123 (2025) (citing 18 U.S.C. § 1343). The false representations must be *material*, *id.* at 135 (citing *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 194 (2016)), which is a "demanding" standard that only implicates statements that induce someone to do something they otherwise would not have done. *See Universal Health*, 579 U.S. at 194–96 (explaining that defrauding the government in False Claims Act case requires a misrepresentation "so central to the provision of mental health counseling that the Medicaid program would not have paid these claims had it known of these violations"). All of this, under Federal Rule of Civil Procedure 9(b), must be pleaded with particularity.[7]

The series of statements that DET labels as "wire fraud" are far from meeting these requirements. Several of the statements involve Burrei's and Reyes's early communications with DET about "co-branding" Recore, seeking lower costs for DPF franchisees, and otherwise making it seem like Recore belonged in part to DPF. *See* Doc. 15, Am. Compl. ¶ 89. In these statements, DET

[7] DET advances a different standard for wire fraud, arguing that the statute prohibits "any conduct 'which fails to match the reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society." Doc. 31, DET's Resp. Burrei & Reyes Mot., 27–28 (other citation omitted) (quoting *United States v. Curry*, 681 F.2d 406, 410 (5th Cir. 1982)). But the "expansive reading" in *Curry* was limited by a later Supreme Court decision requiring "a direct deprivation of money or property resulting from the fraudulent scheme." *United States v. Herron*, 825 F.2d 50, 55 n.6, 56 (5th Cir. 1987).

has not alleged the specific money or property that Burrei and Reyes sought, nor has it alleged that their statements were "material" to DET's decision to do business with them. Otherwise, the statements involve telling DPF Franchisees that they needed to share information with their franchisor, file lawsuits, or stop using Recore; deploying New Core and telling DPF Franchisees that they could only use authorized vendors; and contacting the EPA to attempt to partner with them to harm DET. *See id.* None of these allegations specify what specific money or property was sought or what materially false statement was made to induce someone to do something they were otherwise not inclined to do. Thus, DET's additional information about Burrei's and Reyes's internal statements are remarkably weak for its RICO claim predicated on wire fraud.

On top of that, DET's final two causes of action—for "fraud" and "conversion"—also appear to have been injudiciously thrown into this action. For "conversion," DET alleges that the Defendants "assumed and exercised dominion and control over [DET's] trade secret information in an unlawful and unauthorized manner" and refused to return the information when demanded by DET. *See id.* ¶¶ 120–25. For "fraud," DET alleges that the Defendants knowingly "made material representations that were false" to induce DET to act. *See id.* ¶¶ 126–31. For both of these claims, DET has not elucidated the facts or theory that make them distinct causes of action from the RICO predicate acts.

For all of these reasons, this case is duplicative of DET's Counterclaims and, regardless of intent, reflects an attempt to circumvent procedure in DET's already-existing cases. The Court therefore dismisses this case for claim splitting as a matter of docket management and judicial economy.

C. *The Court Declines to Sanction.*

In their motion to dismiss, Burrei and Reyes also request that DET be sanctioned under 28 U.S.C. § 1927. *See* Doc. 20, Burrei & Reyes Br., 14–15. That statute allows courts to require an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." § 1927. The Court declines to award such sanctions at this time because, although DET's lawsuit violates the rule against claim splitting, it is not clear that DET's only motive for bringing the separate claim was to unreasonably or vexatiously multiply proceedings. In addition, it does not appear that counsel for Burrei and Reyes incurred much additional time or effort to generate their defense to this action, as Burrei's and Reyes's opening brief was merely a series of bullet-pointed assertions. Thus, § 1927 sanctions are not appropriate.

D. *The Court Denies Leave to Amend.*

DET, in both of its response briefs, seeks leave to amend if any part of the Defendants' motions are granted. *See* Doc. 31, DET's Resp. Burrei and Reyes Mot., 31–32; Doc. 33, DET's Resp. Franchisee Defs.' Mot., 24–25. "Whether leave to amend should be granted is entrusted to the sound discretion of the district court, and that court's ruling is reversible only for an abuse of discretion." *Young v. U.S. Postal Serv. ex rel. Donahoe*, 620 F. App'x 241, 245 (5th Cir. 2015) (citations omitted). "Denial of leave to amend is appropriate where there is no indication that amendment would cure the defects in a complaint." *Id.* (citations omitted). Here, an amended complaint would not resolve the claim-splitting issues in DET's complaint. Thus, leave to amend is not appropriate.

**IV.**

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** both motions to dismiss (Docs. 19 and 23). This case is **DISMISSED WITH PREJUDICE**. A final judgment will follow.

**SO ORDERED**.

**SIGNED: September 8, 2026.**

JANE J. BOYLE
SENIOR UNITED STATES DISTRICT JUDGE